IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| JOHN DENNIS BAILLIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 621-074 |
| | ) | |
| CAPTAIN KENNETH THOMPSON and | ) | |
| HEAD NURSE LYNN, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, currently detained at the Bulloch County Jail ("BCJ") in Statesboro, Georgia, commenced the above-captioned civil rights case *pro se* and *in forma pauperis* ("IFP"). Defendant Kenneth Thompson filed a pre-answer motion to dismiss, (doc. no. 25), which Plaintiff opposes, (doc. no. 36). Pursuant to 28 U.S.C. § 636(c), Plaintiff has consented to the undersigned conducting all proceedings and presiding over final disposition of this case. (See doc. nos. 12-13.) For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

**I.  BACKGROUND**

**A.  Procedural History**

Plaintiff originally filed this case by submitting a complaint with two co-plaintiffs on September 17, 2021, alleging issues with medical care and living conditions at BCJ. See Scott

v. Brown, CV 621-071, doc. no. 1 (S.D. Ga. Sept. 17, 2021) (hereinafter "CV 621-071").[1] Before the Court dismissed the complaint in CV 621-071 and ordered the three co-plaintiffs to file amended complaints individually, Plaintiff filed the present action, CV 621-074, on October 13, 2021. (See doc. no. 5.) The Court then dismissed CV 621-071 and directed the Clerk to identify the complaint in CV 621-074 as an amended complaint. (See id.)

On January 3, 2022, the Court screened the amended complaint and dismissed Plaintiff's official capacity monetary relief claims. (See doc. no. 22.) The Court permitted Plaintiff's Eighth Amendment claim for deliberate indifference to proceed against both Defendants.[2] (Id.) Defendant Thompson moves to dismiss, arguing the entire case must be dismissed because Plaintiff failed to properly exhaust his administrative remedies prior to filing his amended complaint. (See doc. no. 25-1, pp. 5-10.) Defendant Thompson further argues Plaintiff's claims against him are barred by the statute of limitations and do not establish a claim for deliberate indifference. (Id. at 10-14.) In response to the exhaustion claim, Plaintiff argues the grievance procedure description attached to the motion to dismiss is out of date, the record does not contain several inquiries he filed in 2018, and he was unaware he could appeal the denial of a colonoscopy. (Doc. no. 36, pp. 3-5.) In response to Defendant Thompson's other grounds, Plaintiff argues Defendant Thompson was responsible for inmate's medical care, the statute of limitations has not run, and Defendant Thompson is in default. (Id at 6-12.)

---

[1]Plaintiff signed the original complaint on September 6, 2021. CV 621-071, doc. no. 1, p. 24.

[2]Although technically the Fourteenth Amendment Due Process Clause, rather than the prohibition on cruel and unusual punishment found in the Eighth Amendment, governs pretrial detainee claims, the nomenclature need not delay the Court because the standards are the same. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

B.    **Amended Complaint Allegations**

Plaintiff alleges the following facts in his amended complaint. In April 2018, Plaintiff, who has Crohn's disease, suffered a severe flare-up which led to painful bowel movements, stomach pain, rectal pail, and weight loss. (Doc. no. 1, p. 5.) On June 6, 2018, the jail sent him to Cedar Surgical Associates in Statesboro, Georgia, where he was examined by a doctor and diagnosed with a fissure and a ruptured polyp. (Id.) The doctor put Plaintiff on antibiotics and referred him to a gastrointestinal specialist to receive a colonoscopy. (Id.) Over the next several weeks, Plaintiff sought to schedule his colonoscopy, and Defendant Nurse Lynn said she would look into it. (Id.) Months later, Plaintiff's infection, which had briefly subsided after he took antibiotics, returned, leading Plaintiff to be seen by another doctor who also stated Plaintiff needed a colonoscopy and to be seen by a gastrointestinal specialist. (Id.) In response, Defendant Lynn told Plaintiff that Defendant Kenneth Thompson, the jail administrator, would never approve any surgical procedure at the BCJ, and Plaintiff would have to wait until he leaves the jail to have a colonoscopy. (Id.) Plaintiff was then seen by a doctor a third time and was prescribed alternating doses of Prednisone starting on February 1, 2019. (Id. at 5-6.) He continued to suffer from difficult bowel movements and blood in his stool every few months. (Id. at 6.)

On June 10, 2021, Plaintiff requested to be taken off the medication because he feared it would cause long term damage to his health, and his request was granted by August 2021. (Id.) On September 22, 2021, Plaintiff talked to another doctor to see what other treatments were available for his Crohn's disease, but the doctor said Plaintiff could take "Prednisone or nothing." (Id.) Plaintiff agreed and began taking the medication again on September 24, 2021. (Id.)

For relief, Plaintiff seeks a colonoscopy, all the surgeries he requires, to be placed on better medication, damages for pain and suffering, medical fees, and legal fees. (Id. at 8.)

### C. Plaintiff's Relevant Grievance History

In support of the motion to dismiss, Defendant Thompson submitted his own affidavit where he examines Plaintiff's grievance history at BCJ. (See doc. no. 25-2, Thompson Aff.) Defendant Thompson explained that according to BCJ procedures, "if an inmate alleges a violation of his civil rights, the inmate is referred to the formal grievance system" where "he may file a written grievance . . . ." (Id. ¶¶ 3-4.) After reviewing the records on file for Plaintiff, Defendant Thompson identified twelve grievances Plaintiff filed in 2021 while at BCJ, three of which related to medical issues. (See id. ¶¶ 5-7.) Grievances 24426816 and 24427720 involve requests for extra toilet paper, and Grievance 25104972 involves a request for Bentyl. (See id. ¶¶ 8-10 & Ex. B.) These grievances were eventually closed, and neither were appealed. (Thompson Aff. ¶¶ 9-12.)

Defendant Thompson explained that inmates may also make medical inquires per the procedures outlined in Exhibit C. (Id. ¶ 14 & Ex. C.) The records provided include fourteen medical inquiries submitted by Plaintiff in 2021. (See Ex. C.) Inquiry Numbers 24056212, 24625377, 25104960, 25727021, and 26010981 concern Plaintiff's attempt to be taken off Prednisone as described in the amended complaint, and Inquiry Numbers 26073832, 26128418 ask for Cipro to treat Plaintiff's fissure. (See id.)

Plaintiff's current incarceration at BCJ began in May 2021. (Doc. 25-4, p. 1.) However, Plaintiff previously was incarcerated at BCJ for a week in October 2017 and from February 2018 to December 2020. (Id. at 3, 6.) The records provided by Defendant Thompson only contain grievances and other inquiries made after May 2021. No records from February 2018 to December 2020 have been provided, though that is the time period in which the bulk of Plaintiff's claims against Defendants arose. (See Ex. C.) Indeed, the only 2021 event

4

Plaintiff describes in his amended complaint is his request to be taken off, then placed back on, Prednisone. Nonetheless, Defendant Thompson attests "the Bulloch County Jail does not have a record of [Plaintiff] filing any grievances or appeals regarding the allegations in his complaint," and that statement has not been contradicted by Plaintiff. (Thompson Aff. ¶ 13.)

In his response to the motion to dismiss, Plaintiff claims there was no physical or digital handbook or statement of policies available to inmates in 2018. (Doc. no. 36, pp. 4-5.) Plaintiff was instead verbally instructed to "place all matters involving medical – sick calls, inquiries and medical grievances – under medical visits." (Id.) After a new kiosk was installed in July 2018, Plaintiff made four requests on the kiosk between July and September 2018 to schedule a colonoscopy. (See id.; doc. no. 1, pp. 5, 8.) Defendant Lynn responded to these requests, telling Plaintiff she was looking into the matter. (See doc. no. 1, pp. 5, 10; doc. no. 36, p. 4.) It was only after these requests and Defendant Lynn's responses that Defendant Lynn finally told Plaintiff Defendant Thompson would never approve any procedure.

In his amended complaint, Plaintiff checked the boxes indicating BCJ had a grievance system covering his claims and he filed a grievance. (Doc. no. 1, p. 9.) Plaintiff never states he appealed any grievance, but instead claims, "Captain Kenneth Thompson is the highest level of the grievance process at [BCJ]." (See doc. no. 1, p. 10.) Plaintiff does state, however, that he was unaware at the time he could appeal the decision denying him a colonoscopy. (Doc. no. 36, p. 5.)

## II.     DISCUSSION

### A.     Plaintiff's Claims Are Not Barred by the Statute of Limitations Because the Continuing Violation Doctrine Applies

Defendant Thompson argues Plaintiff's claims are barred by the statute of limitations because they occurred two years before Plaintiff filed suit on September 17, 2021.  (Doc. no. 25-1, pp. 14-15.)  Defendants correctly state the statute of limitations for § 1983 cases in Georgia is two years.  See Flowers v. Fulton Cty. Sch. Sys., 654 F. App'x 396, 401 (11th Cir. 2016) ("It is . . . well-settled that § 1983 claims filed in Georgia are governed by the same two-year statute of limitations for personal-injury actions.") (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)).

However, the continuing violation doctrine allows a plaintiff to sue on a time-barred claim "when additional violations of the law occur within the statutory period."  Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001).  "'The critical distinction in the continuing violation analysis . . . is whether the plaintiff[ ] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.'"  Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (quoting Knight v. Columbus, Ga., 19 F.3d 579, 580-81 (11th Cir.1994)).  If a continuing violation is found, a plaintiff can recover for any violation for which the limitations period has not run.  Knight, 19 F.3d at 581.

Here, Defendant Thompson's alleged refusal to allow Plaintiff a colonoscopy was ongoing and repeated.  Although Plaintiff was first denied a colonoscopy sometime before February 1, 2019, two years and seven months before Plaintiff filed his lawsuit and outside the

two-year statute of limitations period, he states he has been denied colonoscopies every year since and has still yet to receive one. (Doc. no. 36, pp. 8-9.) Thus, Plaintiff does not complain of the consequences of a one-time denial of a colonoscopy; rather, he complains of a continued and blanket denial of the procedure at least through December 2021, when his initial stint at BCJ ended. See Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) ("[C]ontinuing to expose [Plaintiff] to the source of his scabies after he was diagnosed was a continuing violation of [Plaintiff]'s rights."); cf. Brown v. Roberts, No. 5:09-cv-117, 2010 WL 1258028, at *2 (M.D. Ga. Mar. 26, 2010) (finding continuing violation by defendants ended when prisoner plaintiff transferred to another prison). Accordingly, under the continuing violation doctrine, events occurring before September 17, 2019, are actionable.

Further, though Plaintiff neither associates Defendants with the amended complaint allegations relating to his Prednisone prescription nor exhausted administrative remedies regarding those allegations, Plaintiff's Prednisone issues involve events occurring after September 17, 2019, and are within the statute of limitations.

    **B.**     **Defendant Thompson Timely Filed and Answer**

In his response brief to the motion to dismiss, Plaintiff moved for default judgment, arguing Defendant Thompson failed to respond to Plaintiff's complaint within sixty days of waiver of service pursuant to Rule 12. (Doc. no. 37, pp. 9-10.) Putting aside whether Plaintiff's motion was made in accordance with Fed. R. Civ. P. 55, Defendant Thompson timely filed his answer. Defendant Thompson was required to file his answer by Saturday, March 5, 2022, sixty days from date the request for a waiver was sent. Fed. R. Civ. P. 12(a)(1)(A)(ii). Because that date was a Saturday, the deadline was extended to Monday, March 7, 2022. Fed. R. Civ. P. 6(a)(1)(C). Defendant Thompson filed his answer and motion

to dismiss that day.  (Doc. nos. 25-26.)  Accordingly, the Court **DENIES** Plaintiff's motion for default judgment.  (Doc. no. 37.)

      **C.**     **Plaintiff Did Not Exhaust His Available Administrative Remedies**

           **1.**     **The Legal Framework for Determining Exhaustion**

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "there is the possibility of at least some kind of relief." Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake,

578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegation or arguments under the first or second situations.  To the extent Plaintiff argues prison officials did not make grievance procedures available to inmates, the Court makes factual findings with respect to that allegation *infra* § II(C)(3)(b).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

### 2.     The Administrative Grievance Procedure

Along with his affidavit, Defendant Thompson has provided a copy of the Bulloch County Sheriff's Office Inmate Grievance Procedures, policy number 3-5-20. (Thompson Aff. & Ex. A. (hereinafter "PN 3-5-20").)  Per PN 3-5-20, if an "inmate has a complaint, the jail officer receiving the complaint is to attempt to resolve the complaint informally."  Id. § (B)(3).  If the complaint is not handled informally, the inmate may file a written grievance "within five days of discovery or when he reasonably should have discovered the incident."  Id. § (B)(6).  However, if the complaint deals with a criminal act or a violation of an inmate's civil rights, "the jail officer is to refer the inmate to the formal grievance system and not attempt to resolve the complaint informally."  Id. § (B)(4).

An inmate may obtain and submit grievance forms through the officer supervising his housing unit.  Id. § (B)(7).  However, by 2018 a kiosk was installed at BCJ, and inmates are

now able to access forms and submit grievances through the kiosk rather than through an officer. (Doc. no. 35, p. 3; doc. no. 36, p. 4.)

Once a grievance is received, an officer logs the complaint and acknowledges receipt to the inmate. PN 3-5-20 § (B)(11). After an investigation by an impartial hearing officer, that hearing officer must provide a written report to the jail administrator and a written response to the inmate indicating the decision within fifteen days of receiving the complaint. Id. § (B)(12)-(13). At that point, the inmate has three days to appeal the decision to the jail administrator. Id. § (B)(14). The jail administrator must respond to the appeal within ten days, and only after the inmate receives a response may the inmate "resort to other avenues for the resolution of the problem." Id. § (B)(16)-(18).

Regarding medical inquiries, Defendant Thompson has provided a copy of the Bulloch County Sheriff's Office non-emergency medical services procedure, policy number 3-5-4. (Thompson Aff. & Ex. C. (hereinafter "PN 3-5-4").) Inmates are informed of BCJ's medical complaint procedures during orientation. PN 3-5-4 § (B)(1). Like grievances, inmates may request and submit medical inquiry forms through an officer, though inmates have been able to participate in the process via kiosk since at least 2018. Id. § (B)(2)-(5); (Doc. no. 36, p. 4; doc. no. 35, p. 3.) There is no medical inquiry appeal process; rather, if an inmate believes a jail employee's response to a medical issue constitutes a violation of his civil rights, then he should file a grievance to trigger the above described grievance review process. (See Thompson Aff. ¶ 3.)

   3.   **Plaintiff's Failure to Exhaust**

Plaintiff alleges he made four requests asking to schedule a colonoscopy between July and September 2018. "[A] couple of months" after his last inquiry but before February 1,

11

2019, Defendant Lynn told Plaintiff Defendant Thompson "would never approve any surgical procedure." (Doc. no. 1, p. 4; doc. no. 36, p. 4.) In his amended complaint, Plaintiff acknowledges BCJ's grievance process and claims he filed a grievance concerning these facts that went to the "highest level of the grievance process" before he filed his lawsuit. (Doc. no. 1, p. 10.) Under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and defendants have the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Off., 23 F.4th 1299, 1307-08 (11th Cir. 2022). In doing so, defendants must show administrative remedies were "generally available." Wright v. Georgia Dep't of Corr., 820 F. App'x 841, 845 (11th Cir. 2020) (*per curiam*), *cert. denied*, 141 S. Ct. 1416 (2021). Once a defendant has met his burden showing remedies and failure to exhaust, the burden shifts to Plaintiff to show the generally available remedies outlined by defendant were "effectively unavailable *to him*." Id. (emphasis added). As explained in detail below, the Court concludes Defendant Thompson has carried the burden to show Plaintiff did not exhaust his administrative remedies.

### a. Plaintiff Failed to Exhaust Administrative Remedies

First, the Court addresses Plaintiff's assertion that the grievance procedure in Exhibit A is outdated because the sheriff listed on the procedure left office in 2016 and BCJ has since moved to a paperless process. (Doc. no. 36, pp. 3-4.) As explained by the Thompson Affidavit and Defendant's response brief, the procedure outlined in PN 3-5-20 is still in effect, although inmates may now file inquiries and grievances via a kiosk rather than through an officer. (Thompson Aff. ¶ 3; doc. no. 35, p. 3.) The Court finds no reason to doubt PN 3-5-20 was in

effect at the times relevant to this lawsuit and that jail officials adhered to the process outlined therein.

Next, the Court finds Plaintiff did not complete BCJ's grievance process before filing this lawsuit. Defendant Thompson attests "the Bulloch County Jail does not have a record of [Plaintiff] filing any grievances or appeals regarding the allegations in his complaint," and that statement has not been contradicted by Plaintiff. Furthermore, Plaintiff's own description of his activities shows he did not properly follow BCJ's grievance process. As explained, Plaintiff filed at least four requests through the kiosk after being told he needed a colonoscopy in June 2018. These requests appear to be medical inquiries as outlined in PN 3-5-4, not grievances as outlined in PN 3-5-20.[3] Even if they were grievances, Defendant Lynn responded to each request, and Plaintiff never sought review of those responses. Importantly, Plaintiff's own statements show he never filed a grievance or appeal after finally being denied a colonoscopy by Defendants in late 2018 or early 2019. The ultimate denial of a colonoscopy is the root of Plaintiff's Eighth Amendment claim, and Plaintiff took no formal action after Defendant Lynn's pronouncement.

To the extent Plaintiff's Eighth Amendment claims involve his dissatisfaction with his Cipro and Prednisone prescriptions, the 2021 records show he filed no grievances concerning Cipro or Prednisone, and Plaintiff never describes any grievances or appeals filed before 2021.

---

[3]Though Plaintiff's original complaint filed in CV 621-071 is inoperative, Plaintiff initially answered "no" when asked whether he filed a grievance concerning the facts relating to the complaint. (See doc. no. 6, p. 17); see Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("an amended complaint supersedes the initial complaint and becomes the operative pleading in the case").

13

Thus, Plaintiff did not exhaust the two-part grievance procedure at BCJ for any of the claims in his lawsuit. The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159. Therefore, based on the above, the Court finds Defendant Thompson has met his burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit. The question now turns to Plaintiff's contention that the appeals process was unavailable.

### b. Whether The Appeals Process was Unavailable

Plaintiff asks the Court to find the appeals process is not a part of BCJ's available administrative remedies because he was unaware he could have appealed the denial of a colonoscopy. Citing Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007), Plaintiff states he was not aware of BCJ's grievance process in 2018 because there was no handbook or statement of policies available at the time he sought a colonoscopy, and the handbook copy that was eventually put in the kiosk did not contain a section on grievances. (Doc. no. 36, pp. 4-5.) Plaintiff therefore had "no way of knowing he could appeal the denial of a colonoscopy" when he was denied a colonoscopy after his second visit to the doctor in late 2018 or early 2019. (Id.)

In Goebert, an inmate filed a complaint with a jail officer asking to see an obstetrician. 510 F.3d at 1319. After receiving a response, the inmate did not appeal per the procedures outlined in that jail's general operation procedures before filing a § 1983 action concerning her medical treatment. Id. at 1321. However, prisoners were not permitted access to the general operation procedures at that jail, and the information the jail did provide to inmates did not explain the jail's grievance appeals process. Id at 1322. Because the inmate was

14

unaware of her ability to appeal the denied complaint, the Eleventh Circuit held an administrative remedy was not "available" within the meaning of the PLRA. Id. at 1322-23; see Ross, 578 U.S. 644 n.3 (citing Goebert as example of when administrative remedies are unavailable). The inmate's complaint filed with a jail officer "was sufficient to exhaust her administrative remedies." Goebert, 510 F.3d at 1325.

Defendant Thompson provides no evidence that would counter Plaintiff's unavailability argument and does not claim Plaintiff was provided with information on the BCJ's appeals process in 2018. Instead, Defendant Thompson argues because Plaintiff has since filed several grievances and appeals, he must know how the process works. However, the evidence Defendant Thompson uses to support that proposition is the grievances and appeals Plaintiff filed in 2021, years after disputed events.

The Court has found that Plaintiff did indeed file some form of formal request, but Plaintiff clearly states in his response brief he was unaware he should have filed an appeal because BCJ never provided him information on the appeals process. Plaintiff was instead "verbally instructed to place all matters involving medical – sick calls, inquiries and medical grievances – under medical visits" on the kiosk and was provided no information on appeals. (See doc. no. 36, p. 4.) If Plaintiff's statements are accurate, then the appeals process cannot be considered a part of the available administrative remedies that must be exhausted prior to filing a lawsuit. Goebert, 510 F.3d at 1325.

However, even if Plaintiff has successfully met his burden to show the appeals portion of the grievance was unavailable to him, that would not excuse him from the other parts of the process that *were* available. See Goebert, 510 F.3d at 1324 ("[T]he *appeal remedy* was not one that Goebert was required to exhaust.") (emphasis added); Turner v. Burnside, 541 F.3d

15

1077, 1084 (11th Cir. 2008) ("if the *appeal remedy was available* to Turner, he should have pursued it.") (emphasis added); Hasuan v. Watson, No. 2:20-CV-121, 2021 WL 6497214, at *7 (S.D. Ga. Dec. 20, 2021) ("Plaintiff is not required to exhaust unavailable administrative remedies grievance—in this case appealing his grievance—prior to filing suit."), *adopted by* 2022 WL 130743 (S.D. Ga. Jan. 13, 2022); Michel v. Fed. Bureau of Prisons FCI, No. 716CV00863RDPHNJ, 2017 WL 7680337, at *11 (N.D. Ala. Nov. 15, 2017) (finding exhaustion after inmate "took advantage of every remedy that was available"), *adopted by* 2018 WL 835101 (N.D. Ala. Feb. 13, 2018).

Here, Plaintiff has not alleged he was unaware he could file a grievance, and he was verbally informed of his ability to file both inquiries and grievances through the kiosk in 2018. Plaintiff only claims he was unaware of BCJ's appeal process. Plaintiff even claims he filed grievances relating to his colonoscopy. However, the Court has found that Plaintiff did not file any grievances relating to a colonoscopy that would trigger the grievance procedure outlined in PN 3-5-20 and allow review of his potential civil rights claims. Plaintiff simply submitted medical inquiries asking for certain medical treatment and never filed any formal grievances complaining of BCJ's failure to provide that treatment.

Therefore, while Plaintiff has shown the appeals portion of BCJ's administrative remedies was unavailable to him, he has failed to show or even allege the initial grievance portion was also unavailable. Because the initial grievance portion was available, and because Plaintiff did not file a grievance concerning the denial of a colonoscopy, Plaintiff did not properly exhaust his available administrative remedies before filing suit over that denial. See Pavao v. Sims, 679 F. App'x 819, 825 (11th Cir. 2017) (no exhaustion when prisoner submitted complaints on incorrect forms); Johnson, 418 F.3d at 1159 (requiring *proper* exhaustion); cf.

Goebert, 510 F.3d at 1325 (finding complaint constituted a grievance under the inmate handbook, meaning prisoner did exhaust known remedies).

Because Plaintiff did not exhaust his available administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261. Because the case should be dismissed based on Plaintiff's failure to exhaust, the Court need not address Defendant Thompson's arguments on the merits of Plaintiff's claims against him.

### III.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Thompson's motion to dismiss, (doc. no. 25), **DENIES** the motion for default judgment, (doc. no. 37), **DENIES** as **MOOT** the motion to amend, (doc. no. 41), and **DISMISSES** this case without prejudice. The Court **DIRECTS** the Clerk to enter an appropriate judgment of dismissal and **CLOSE** this case.

SO ORDERED this 15th day of April, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA